**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN GABRIELLI, as an individual, on behalf of himself, the general public, and those similarly situated,

Plaintiff,

v.

HALEON US INC.,

Defendant.

Case No. 3:25-cv-02555-WHO

PLAINTIFF'S OPPOSITION TO DEFENDANT HALEON US INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Hon. William H. Orrick

Hearing Date: July 16, 2025
Hearing Time: 2:00 PM
Courtroom: Courtroom 2

Complaint Filed: March 14, 2025

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. ARGUMENT ..... 3

A. Plaintiff Demonstrates Article III Standing. ..... 3

1. Haleon's Remaining Standing Arguments Are Meritless. ..... 5

2. Plaintiff Alleges a Real and Immediate Threat of Future Injury to Seek Injunctive Relief (Count III) ..... 7

B. Plaintiff Adequately Pleads his Common Law Privacy Claims. ..... 9

C. Plaintiff States a Wiretapping Claim Under the Penal Code. ..... 13

1. Plaintiff Alleges Intent. ..... 13

2. Plaintiff Alleges "Contents" Were Intercepted. ..... 15

D. Plaintiff Pleads a "Pen Register" Claim Under Section 638.51 ..... 16

E. Plaintiff's CIPA Claims Are Not Barred by the Statute of Limitations. ..... 18

F. Plaintiff Adequately Pleads Fraud. ..... 20

G. Plaintiff Adequately Pleads Unjust Enrichment. ..... 22

H. Plaintiff Adequately Pleads Trespass to Chattels. ..... 23

I. Plaintiff May Allege Punitive Damages. ..... 24

J. Plaintiff Requests Leave to Amend If Necessary. ..... 25

IV. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

***Cases***

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 23

*Abselet v. Hudson Labor Sols.*, Inc., 804 F. App'x 448 (9th Cir. 2020) .......... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 21

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 20

*Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2023) .......... 8

*Bowen v. Energizer Holdings*, 118 F. 4th 1134 (9th Cir. 2024) .......... 5, 6

*Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 .......... 20

*Brown v. Google LLC*, 685 F.Supp.3d 909, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .......... 9, 16

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 22

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) .......... 16

*Calhoun v. Google LLC*, 526 F.Supp.3d 605 (N.D. Cal. 2021) .......... 10

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 3

*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) .......... 24

*Crowder v. Shade Store, LLC*, No. 23-cv-02331-NC, 2024 U.S. Dist. LEXIS 114470 (N.D. Cal. June 26, 2024) .......... 25

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .......... 7, 8

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) .......... 26

*Doe v. Amgen, Inc.*, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024 .......... 14

*Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (Orrick, J.) .......... 19, 20, 23

*Doe v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 24

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) (Orrick, J.). .......... 22

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......... 23

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 3

*Fields v. Wise Media, LLC,* 2013 U.S. Dist. LEXIS 136914 (N.D. Cal. Sept. 24, 2013 ................ 23

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) ................................................................ 7

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098 (9th Cir. 2014).. 16

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................ 17, 18

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) .................................... 11

*Heeger v. Facebook, Inc*. 509 F. Supp 3d 1182 (N.D. Cal. 2020)................................................ 20

*Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024) ............. 15

*Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272 (2009)....................................................................... 9

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994) .................................................... 11

*In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................................................... 16

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ...........................passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) 22

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015) ....... 10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019)........ 4

*In re Google Location History Litig*., 514 F. Supp. 3d 1147 (N.D. Cal. 2021)....................... 10, 11

*In re iPhone Application Litig*., 844 F. Supp. 2d 1040 (N.D. Cal. 2012 ....................................... 23

*In re Meta Healthcare Pixel Litig*., 713 F. Supp. 3d 650 (N.D. Cal. 2024) ................................. 24

*In re Tracht Gut, LLC*, 836 F.3d 1146 (9th Cir. 2016)................................................................... 12

*In re Zynga Priv. Litig*., 750 F.3d 1098 (9th Cir. 2014) ............................................................... 15

*Jager v. Davol, Inc*., No. 16-cv-1424-JGB, 2016 U.S. Dist. LEXIS 188821 (C.D. Cal. Oct. 20, 2016) ........................................................................................................................................ 25

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ................................................ 14

*Katz-Lacabe v. Oracle America, Inc*., 668 F. Supp. 3d 928 (N.D. Cal. 2023) .................. 11, 16, 22

*Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir. 2018) ............................................... 7

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) ........................................................................................................................................ 14

*Lanovaz v. Twinings N. Am. Inc*., 726 F. App'x 590 (9th Cir. 2018) .............................................. 8

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) .................................... 16

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ................................................................................................ 17, 18

*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) . 15

*Omni King, Inc. v. Accelerant Specialty Ins. Co.*, No. 23-cv-0048-SSS-KKx, 2023 U.S. Dist. LEXIS 87708 (C.D. Cal. Apr. 19, 2023) ...................................................................... 25

*Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .. 12, 14

*Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, (S.D. Cal. Dec. 3, 2024)....... 13, 22

*Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) .... 6, 9, 11

*Ruhnke v. Skinmedica, Inc.*, No. 14-cv-0420-DOC, 2014 U.S. Dist. LEXIS 207235, 2014 WL 12577172 (C.D. Cal. Sept. 5, 2014)........................................................................... 25

*Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907 (1999) ............................................................ 11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393 (9th Cir. 1986) ....................... 25

*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025)............................................................................................................ 23

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........................................................................................................... 17, 18

*Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ............................................................................................ 14

*Shanahan v. IXL Learning, Inc*., 2024 U.S. Dist. LEXIS 203111 (N.D. Cal. Nov. 1, 2024)........... 7

*Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ......................................................................................................................... 11

*Six v. IQ Data Int'l, Inc*., 129 F.4th 630 (9th Cir. 2025) ............................................................ 3

*Smith v. Yeti Coolers, LLC*, 2025 U.S. Dist. LEXIS 54902 (N.D. Cal. Mar. 14, 2025)................. 14

*Smith v. Yeti Coolers, LLC*, 2025 U.S. Dist. LEXIS 54902 (N.D. Cal. Oct. 21, 2024)............ 14, 15

*Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020) ............................................... 23

*St. Aubin v. Carbon Health Techs., Inc*., 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ............................................................................................................. 1, 9, 13, 16

*Thomas v. Papa Johns Int'l, Inc*., No. 22-cv-2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024)............................................................................................ 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021 .......... 3

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2009) .......... 19

*Weizman v. Talkspace, Inc*. 705 F. Supp 3d 984 (N.D. Cal 2023) .......... 8

*Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 12

*Yockey v. Salesforce, Inc*., 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 1, 4, 6

*Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 14, 15

*Yumul v. Smart Balance, Inc*., 733 F.Supp.2d 1117 (C.D. Cal. 2010) .......... 19

*Yunker v. Pandora Media, Inc*., 2013 U.S. Dist. LEXIS 42691 (N.D. Cal. Mar. 26, 2013) .......... 24

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007) .......... 7

***Statutes***

Cal. Penal Code § 631 .......... 13

Cal. Penal Code § 631(a) .......... 13

Cal. Penal Code § 638.50(b) .......... 17

Cal. Penal Code § 638.51(a) .......... 16

Cal. Penal Code § 638.51(b) .......... 17

Fed. R. Civ. P. 9(b) .......... 22

## I. INTRODUCTION

Plaintiff Jonathan Gabrielli ("Plaintiff") brings this Class Action Complaint against Haleon US Inc. ("Defendant" or "Haleon") for intentionally aiding third parties to collect California users' private communications ***against their express instructions.*** Haleon promised to users that they could "Reject All" cookies when they visited Defendant's Websites, as follows**:**




That representation was false. Haleon surreptitiously enabled third-party tracking cookies on the devices of California visitors to the Websites, *even after those visitors explicitly rejected and opted out of* ***all*** *such cookies*. As a result, Haleon caused the third parties to collect vast swaths of user data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively, "Private Communications") ***despite promising not to do so***. Compl. (ECF 1) ¶ 3. This deceptive practice is a highly offensive violation of Plaintiff's privacy rights, as well as a breach of Defendant's promises. *See, e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive).

Haleon attempts to sidestep liability for its blatant privacy violations by arguing that Plaintiff lacks standing to sue because he does not allege an "injury in fact." But "a concrete injury for Article III standing purposes occurs when [a] third party tracks a person's internet browser activity without authorization," exactly like Plaintiff alleges here. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (cleaned up). Beyond lacking authorization, Haleon intentionally disregarded Plaintiff's, and those similarly situated website visitors', express direction not to track them.

The remainder of Haleon's arguments can easily be dispensed with. Plaintiff adequately pleads his common law privacy claims. Plaintiff had a reasonable expectation that Haleon would not disclose his communications and information through cookies because Haleon set that expectation itself through the cookie banner it programmed to pop-up on its website. Its violation of its promise that users could "Reject All" cookies is highly offensive. Through this violation, Defendant aided third-parties in the interception of their data, giving rise to Plaintiff's wiretapping claim. Further, Plaintiff's claims based on the pen register theory survive because the statutory definition of a pen register extends to internet technologies that collect user data, not just telephones. Further, Plaintiff has adequately pled fraud by demonstrating a misrepresentation of material fact (the "Reject All" cookies button that did not, in fact, "Reject All" cookies), Haleon's knowledge of falsity and intent to defraud, and resulting damages in the form of diminution in value of his private and personally identifiable information. Finally, Plaintiff's trespass to chattels and unjust enrichment claims must proceed because Plaintiff adequately pleads that Haleon unjustly benefited from the collection and monetization of the private data without consent, for which legal remedies are inadequate. The Court should deny Haleon's motion in its entirety

## II. FACTUAL BACKGROUND

When consumers visit Haleon's Websites (including tums.com; advil.com; centrum.com; Theraflu.com; caltrate.com; flonase.com; Sensodyne.com; emergenc.com; collectively, the "Websites"), Haleon displays to them the following popup cookie consent banner in which Haleon offers Website users the option to "Reject All" or "Accept" cookies:




Compl. ¶ 1.

Despite its clear, affirmative representation that Website users could "Reject All" cookies, Haleon nevertheless enabled several third parties—including, without limitation Google LLC, and Microsoft Corporation (the "Third Parties")—to use cookies to collect those users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," search queries, and more. *Id*. at ¶¶ 2, 18, 29-33. The Third Parties used the personal information that they collected from Plaintiff and other Website(s) users to create consumer profiles, target and personalize advertising, and analyze the effectiveness of advertising – all for their own financial gain. *Id*. ¶¶ 4, 34-64. This type of tracking and data sharing is exactly what users who chose to reject all non-essential cookies on the Website sought to avoid. *Id.* ¶ 5.

## III. ARGUMENT

### A. Plaintiff Demonstrates Article III Standing.

Invasions of privacy have long been recognized at common-law as concrete injuries. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc*., 129 F.4th 630 (9th Cir. 2025). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). In *In re Facebook Inc. Internet Tracking Litig.*, the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." 956 F.3d 589, 602–03 (9th Cir. 2020). Similarly, "legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, SCA, and CIPA." *Id*. at 599. Accordingly, control of users' browsing history, *see* Compl. at ¶ 18, is a "concrete" interest that creates standing for privacy related claims. *Id.*; *see also Campbell v. Facebook, Inc*., 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *see also Yockey*,

688 F. Supp. 3d at 969–970 ("Statutes such as CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" . . . "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Plaintiff alleges that Haleon invaded his privacy—causing him a concrete injury—when Haleon intentionally permitted the Third Parties to place cookies on Plaintiff's browsers and devices in order to "collect, track, and compile users' Private Communications, including his browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. Compl. ¶ 129; *see also id*. ¶¶ 3, 34–36, 129, 138, 157, 171, 182. This is a concrete injury sufficient to show Plaintiff's Article III standing. *See In re Facebook Tracking*, 956 F.3d at 599 (holding that Facebook's tracking and collection of personal information on individual browsing, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives, conferred standing). Indeed, the Third Circuit has noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) (cited favorably by the Ninth Circuit in *In re Facebook Tracking*). Here, where Haleon presented Plaintiff with a promise that he could control his information, but allowed Third Parties to collect that information anyway, standing is manifest. Haleon's argument to the contrary ignores the Complaint.

Haleon ignores that Plaintiff alleges multiple claims: Invasion of Privacy (Compl. ¶ 82); Intrusion Upon Seclusion (*id*. ¶ 94); Wiretapping in Violation of the California Invasion of Privacy Act (California Penal Code § 631) (*id*. ¶ 104); Use of a Pen Register in Violation of the California Invasion of Privacy Act (California Penal Code § 638.51) (*id.* ¶ 124); Common Law Fraud, Deceit and/or Misrepresentation (*id.* ¶ 135); Unjust Enrichment (*id.* ¶ 147); and Trespass to Chattels (*id.*

¶ 157). Defendant attacks Plaintiff's invasion of privacy claims as insufficiently "concrete," and asserts that "All Counts" of Plaintiff's Complaint fail for the same basis, but fails to address standing for Plaintiff's other claims, including the fraud, trespass to chattels and unjust enrichment claims. *Compare* ECF 18-1 at 7-10 ("MTD") *with* Compl. ¶¶ 82, 94, 104, 124, and *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598–99 (distinguishing standing for CIPA with standing for trespass to chattels, and fraud and analyzing them separately). Haleon's analysis thereby provides no basis for dismissing these claims at all. Nor could it. Plaintiff's fraud and unjust enrichment claims allege the concrete harm of fraudulently inducing Plaintiff to give up data in return for nothing. The Ninth Circuit expressly recognized these harms as concrete in the context of unjust enrichment. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

**1. Haleon's Remaining Standing Arguments Are Meritless.**

Most of Haleon's standing arguments conflate standing—i.e., whether there is a sufficient "concrete injury"—with the *merits*. *See* MTD at 8-10. Indeed, whether an invasion of privacy is "highly offensive" or not; whether there is a "reasonable expectation of privacy" in the information shared; and whether an economic benefit was conferred all address the *merits* of Plaintiff's claims. While Plaintiff discusses each of these issues below, at best, Haleon's conflation proves these issues are "intertwined" with standing, *see Bowen v. Energizer Holdings*, 118 F. 4th 1134, (9th Cir. 2024), and thus would "necessarily require [this Court] to resolve the merits issue[s]" before ruling upon standing. Even when a defendant challenges standing with evidence, courts are limited to resolving "purely jurisdictional question;" they cannot resolve "jurisdictional questions are intertwined with the merits of a claim," including any element of the claims. *Id*. at 1139 and 1144.

Haleon does not submit any evidence in support of its standing argument and, thus, asserts a purely "facial attack," where the court must "accept the truth of the plaintiff's allegations." *Id*. at n. 6. That should end the inquiry, given Plaintiff's allegations, as discussed above. The Court should

not second-guess these allegations at this stage and certainly cannot resolve factual disputes that go to the elements of the claims. *See Bowen*, 118 F.4th at 1144.

Haleon further suggests that Plaintiff must plead an *economic* injury, in addition to a concrete invasion of privacy, to establish standing to survive a Motion to Dismiss. MTD at 2, 9. But, that, too, is wrong. Concrete invasions of privacy rights provide a cognizable injury sufficient for Article III standing in privacy cases. *See generally TransUnion LLC*, 594 U.S. at 425 (discussing intangible harms). Even if this were not the case, Plaintiff adequately pleads that "his personal data. . . has a monetary value, which 'is measured as either the consumer's willingness to accept compensation to sell her data or the consumer's willingness to pay to protect her information,'" which is sufficient under Article III. Compl. at ¶¶ 60-61; *see Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting *class certification* when damages were based on "User's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

Haleon next argues that Plaintiff's pled injury is purely statutory, and therefore not concrete—but this too fails. *See* MTD at 9. "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity *without authorization*." *Yockey*, 688 F. Supp. 3d at 969-70 (emphasis added). That is precisely what Plaintiff alleges here: Haleon "caus[ed] third-party cookies to be stored on consumers' devices and browsers that enabled the Third Parties to track and collect [Mr. Gabrielli's] Private Communications, including [his] browsing history, visit history, website interactions, user input data" ***without and against Mr. Gabrielli's authorization***. Compl. at ¶ 158. Mr. Gabrielli further pleads a concrete injury by alleging violations of his codified, substantive rights to privacy, "which gives rise to a concrete injury sufficient to confer standing." *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 598.

Finally, Haleon asks this Court to "infer that Plaintiff actively was seeking out potential privacy violations, and thus he had no reasonable expectation of privacy" sufficient to support Article III standing. *See* MTD at 10. This speculation and innuendo gathered from cherry-picked

materials outside the four corners of the Complaint. Haleon never sought judicial notice of these limited materials and cannot do so on reply. *See generally Shanahan v. IXL Learning, Inc.*, 2024 U.S. Dist. LEXIS 203111 (N.D. Cal. Nov. 1, 2024) (*citing Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)). Even if the Court were inclined to consider such materials, the argument asks the Court to draw inferences *against* Plaintiff, and in favor of Defendant, *from those improperly noticed materials*, which it cannot do at the pleading stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (even if a document is subject to judicial notice, the inferences the court can draw from that document must "not [be] subject to reasonable dispute"). Accepting Haleon's argument would require the Court to infer that Plaintiff knew that Haleon would violate his privacy based on previously filed cases against completely different entities and that he was "testing" the Websites at issue here for privacy violations. MTD at 10. That is neither true nor in the Complaint. Indeed, the Complaint *explicitly* pleads otherwise. *See* Compl. ¶ 63 (enumerating reasons Plaintiff visited Websites) and ¶ 63 (Plaintiff "does not have the technical knowledge necessary to test whether the Websites honors users' requests to reject all"). Haleon does not (and cannot) refer to any allegations which would allow the Court to draw such inferences.

#### 2. Plaintiff Alleges a Real and Immediate Threat of Future Injury to Seek Injunctive Relief (Count III)

Plaintiff has standing to seek injunctive relief; Plaintiff establishes a "certainly impending" injury—to himself and to the Class—sufficient to demonstrate Article III standing for injunctive relief. When a plaintiff seeks injunctive relief, "they must demonstrate that they are 'realistically threatened by a repetition of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). And even "a previously deceived consumer may have standing to seek an injunction . . . even though the consumer now knows or suspects . . . because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harms." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

Plaintiff meets this standard. He alleges, for example, that he "continues to desire to browse content featured on the Websites" and "would like to browse websites that do not misrepresent that users can reject all cookies and tracking technologies." Compl. at ¶ 70. However, he will not do so

until "Websites [are] programmed to honor users' requests to reject cookies and tracking technologies." *Id*.

Critically, Plaintiff explicitly pled that he *desires* to visit the Websites again, but cannot do so without risking re-injury. *Id*. This is because he explicitly pleads that he is "unable to rely on [Haleon's] misrepresentations" going forward, because he and others lack "the technical knowledge necessary to test whether the Websites honors users' requests to reject all." *Id*.

This is plainly different from the speculative "some day intentions" that Haleon seeks to attribute to Plaintiff. *Compare id. with Lanovaz v. Twinings N. Am. Inc*., 726 F. App'x 590 (9th Cir. 2018) ("consider buying") and *Weizman v. Talkspace, Inc*. 705 F. Supp 3d 984 (N.D. Cal 2023) ("has not definitely ruled out" visiting Defendant's website). Ruling for Haleon in this situation would necessarily require him—and indeed, any class member—to expose themselves to re-injury to seek injunctive relief. Indeed, this underscores why Haleon's cited case of *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2023) is entirely inapposite. In *Baton*, the plaintiff sued Ledger—a company that sells private Bitcoin wallets—for a data breach in which hackers stole the Plaintiff's information. *Baton,* 740 F. Supp. 3d at 865. The plaintiff sought an injunction against Ledger's advertising that its wallets were secure, because Ledger "misrepresent[ed] that their security features should be trusted" in the first instance. *Id.* at 881. Unlike here, the plaintiff in *Baton* "d[id] not allege that he seeks to purchase Ledger's products in the future **<u>or otherwise rely on Ledger's advertisements[,] labels[.]"</u>** or other representations. *Id*. Here, by contrast, Mr. Gabrielli explicitly pled that "[i]f the Websites were programmed to honor users' requests to reject cookies and tracking technologies, Plaintiff would likely browse the Websites again in the future, but will not do so until then." Compl. ¶ 70. Indeed, he "regularly visits websites that feature content similar to that of the Websites." *Id*. Plaintiff alleges that he "does not know how the Websites are programmed, which can change over time," and lacks "technical knowledge necessary to test whether the Websites honor[] users' requests to reject all cookies," so he "will be unable to rely on Defendant's representations when browsing the Websites in the future." *Id.* Those allegations suffice to show

that Plaintiff is "realistically threatened by a repetition of the violation" sufficient to demonstrate Article III standing to support injunctive relief.

**B. Plaintiff Adequately Pleads his Common Law Privacy Claims.**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009)

The conduct alleged here is a textbook example of an invasion of privacy: Haleon promised users they could "Reject All" cookies, but then immediately placed cookies on their devices and browsers anyway, and enabled third-parties to collect broad swaths of data that users like Plaintiff asked to keep private. *See St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074, at *28–29 ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

Haleon, nonetheless, focuses on the *type* of data shared to argue that its disclosure was not highly offensive, and that Plaintiff did not have a reasonable expectation of privacy. It completely ignores what separates this case from the cases it cites: Haleon's ***own broken promise and false representation*** that users could "Reject All" cookies on the Website to avoid being tracked by third-parties. That fact is outcome-determinative. "[C]ourts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024) citing *In re Facebook*, 956 F.3d at 601-03; *Brown v. Google LLC*, 685 F.Supp.3d 909, 2023 WL 5029899, at *19-20 (N.D. Cal. Aug. 7, 2023) (finding plaintiffs

had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 129, 151 (3d Cir. 2015) (holding that users maintained a reasonable expectation of privacy in their browsing histories when Google tracked URLs after the users denied consent for such tracking).

Here, Haleon set the expectation *itself* that it would not place tracking cookies that share users' data and browsing activity with third-parties if they declined to consent to such cookies. Users who rejected such cookies had a reasonable expectation based on that promise. Claimant had a reasonable expectation of privacy as to ***all of*** his activity on the Websites based on Haleon's *own representations*.[1]

Haleon casts its behavior as "routine" commercial behavior. MTD at 12-13. But there is nothing routine about blatantly lying to consumers, indeed, that characterization just ignores that Plaintiff gave Haleon explicit notice that he did *not* consent to cookies, and thereby the disclosure of his data through those tracking cookies. Compl. ¶¶ 26, 28, 66, 119, 131. Many recent district court decisions have recognized that the tracking and amassing of online data *without consent* is

---

[1] Indeed, Haleon's suggestion that Plaintiff has not identified the type of data is false. Plaintiff alleges the data included: browsing data, which includes "information about the webpages a Website user visits, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns;" visit history, which includes "information about the frequency and total number of visits to the Website;" website interactions, which includes "data on which links, buttons, or ads on the Website that a user clicks," user input data, which includes "the information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information" and other types of data. Compl. ¶ 18. Plaintiff further alleges that Haleon "caused the Third Party tracking cookies to be placed on" his devices, which actually caused cookies to be "transmitted to the Third Parties along with [Plaintiff's] user data, enabling them to collect user data in real time that discloses Website visitors' Private Communications[.]" *Id.* ¶¶ 28-29

"highly offensive." *See, e.g.*, *Katz-Lacabe v. Oracle America, Inc*., 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez* 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy). Here, beyond no consent, Plaintiff and those similarly situated took Haleon up on its promise. But Haleon lied.

Even in instances without a plaintiff's express declination of consent, courts recognize that this type of *accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe,* 668 F. Supp. 3d at 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver*, 2021 U.S. Dist. LEXIS 141090 at *17-18 (N.D. Cal. July 28, 2021) ("nature and volume of the collected information [are] also important" in determining whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive."). As the California Supreme Court explained, "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 916 (1999). Plaintiff here did not consent to ***any*** third-party cookie tracking, let alone third-parties who intended to use his data for marketing purposes. *See* Compl. ¶¶ 26, 65, 119, 131. To the contrary, he expressly rejected it. That conduct violates not only Haleon's own promises, but also social norms. This suffices to establish that Plaintiff and other users both had a reasonable expectation of privacy, and that Haleon's conduct was highly offensive.

In any event, these questions are ones that courts do not resolve on the pleadings; these inquiries are fact-intensive and entail weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook, Inc., Internet Tracking*

*Litig*., 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

Haleon points to Plaintiff's alleged visit to the Sensodyne Website in June 2024, and argues Plaintiff had no expectation of privacy because he learned of Defendant's violations before then. *See* MTD at 13. But Haleon ignores that Plaintiff's prior visits were to *different* Websites. Compl. ¶ 63 (Plaintiff visited the Tums, Centrum, and Emergen-C websites in August 2023, November 2023, and January 2024 respectively). Haleon is asking this Court to, in essence, infer that Plaintiff's contemporaneous knowledge that (a) the Sensodyne website was Haleon's and (b) that Haleon was still not honoring its representations that users could "Reject All" cookies. The Court must also draw inferences in Plaintiff's favor at this stage. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). Taking Plaintiff's allegations in their totality, it is unreasonable to infer knowledge since the prior visits were to different websites. Nothing in the Complaint alleges that Plaintiff contemporaneously knew that Haleon owned and operated the Sensodyne Website during his June 2024 visit. And even if it did, there is nothing in the complaint showing Plaintiff's knowledge that Haleon was not honoring its representations in the banner when he visited the Sensodyne website. As the Complaint alleges, "[t]he only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools." Compl. ¶ 70. And, "[a]s the name suggests, such tools are designed for use by 'developers' (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom." *Id.* The Complaint further alleges that "Plaintiff is not a software developer and has not received training with respect to HTTP network

calls." *Id.* Thus, the Court cannot infer that Plaintiff knew his privacy would be violated when he visited the Sensodyne Website.[2]

**C. Plaintiff States a Wiretapping Claim Under the Penal Code.**

Plaintiff alleges a wiretapping claim under the fourth prong of Section 631(a) which prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Here, Plaintiff alleges that Haleon has aided the third parties in their CIPA violations. Haleon's arguments to the contrary lack merit.

**1. Plaintiff Alleges Intent.**

First, the plain text of CIPA "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen recently rejected this same argument in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023). In *James*, the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. *Id*. at 945–46. Like here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954.

Plaintiff adequately alleges intent. Decisions from the Ninth Circuit consistently hold that the intent element is satisfied by pleading that Defendant intentionally (i.e., not accidentally) "enable[d]

---

[2] Indeed, at most, this argument pertains to the sole visit to the Sensodyne Website in June 2024, but not Plaintiff's prior visits to the other Websites. Courts recognize that "[p]rivacy is not an all-or-nothing proposition." *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 at 782. Thus, the argument cannot defeat the claim.

a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024; *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). Regardless of specific intent, courts routinely find allegations sufficient when that defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g.*, *Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. Here, it is even more egregious because Haleon expressly promised that it would not act as it did, but immediately disregarded that promise.

The intent requirement in the analogous Wiretap Act is also instructive. As Haleon concedes, "courts routinely analyze CIPA and [the] Federal Wiretap Act, 18 U.S.C. § 2512 claims together as they are 'analogous.'" MTD at 17 n.6 (citing *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083–84 (C.D. Cal. 2021) and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607–08.) "The Ninth Circuit has rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025).

Nevertheless, Haleon's intent argument relies on two decisions that contradict the prevailing interpretation that wiretapping causes of action "only require[] an intentional act, defined as an act that is being done on purpose." *Id.* Haleon cites both *Smith v. Yeti Coolers, LLC*, 2025 U.S. Dist. LEXIS 54902, at *11 (N.D. Cal. Oct. 21, 2024) ("*Yeti I*") and *Smith v. Yeti Coolers, LLC*, 2025 U.S. Dist. LEXIS 54902, at *2 (N.D. Cal. Mar. 14, 2025) ("*Yeti II)*, to support its position. *See* MTD at 15, 17. But both of those cases failed to analyze the intent requirement in light of analogous federal wiretap cases, which courts routinely consult when interpreting CIPA, as explained above. Instead, the *Yeti* court adopted a novel reading of CIPA's aiding prong—§ 631(a)(4)—that novelly imposed a heightened *mens rea* requirement. *See, e.g.*, *James*, 701 F. Supp. 3d at 953; *Shahnaz Zarif*, 2025 U.S. Dist. LEXIS 26519, at *20; *see also Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist.

LEXIS 186701, at *22 (C.D. Cal. Oct. 4, 2024) (observing "a *plain* reading of the statute" establishes that the Clause 4 does ***not*** adopt a higher standard) (emphasis added).

Separately, both *Yeti* cases are factually distinct: There, unlike here, the plaintiff alleged that the website owner was liable for aiding a third-party payment processor to "incorporate[] customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" in violation of the statute. *Yeti I.* at *1. Here, however, Haleon integrated the third parties' software that placed and transmitted cookies into its Websites to obtain user data for advertising and analytics functions. Compl. ¶¶ 21-22. More importantly, Haleon did not disable this software or prevent the third parties from obtaining user data ***even after representing to Plaintiff and class members that they could "Reject All" cookies***. *Id*. ¶¶ 28-35. Defendant cannot claim that it did not intend to enable the third parties to wiretap and eavesdrop on users' Personal Communications since it intentionally installed the third party code on its Websites to do exactly that.

**2. Plaintiff Alleges "Contents" Were Intercepted.**

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon*, 549 F. Supp. 3d at 1082 (explaining CIPA protects "user-generated material" but not "routine identifiers").

Defendant ignores that it is black letter law that search terms and descriptive URLs—like those alleged here—squarely fall within this definition. *See* Compl. ¶¶ 117, 18 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data" like "search queries, the user's name, age, gender, email address, location, and/or payment information"); *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS

179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

The cases Defendant cites do not support its position. MTD at 16. In *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), for example, plaintiffs alleged only that *record information* was captured, such as "button clicks, mouse movements, [and] scrolling[,]" not the user input data that Plaintiff alleges here. *See* Compl. ¶ 18. In *Katz-Lacabe*, the court denied the motion to dismiss, finding that plaintiff adequately pled "contents" because they alleged URLs and data entered into forms were intercepted. 668 F. Supp. 3d at 944–945. Here, Plaintiff alleges browsing history, website interactions, and user input data such as search strings were intercepted. That data qualifies as the "contents" of a communication.

Haleon suggests that further specificity is required; however, courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear" but "merely needs to show that the contents were not record information such as her name and address"); *James*, 701 F. Supp. 3d at 956 (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (acknowledging that search engine queries, accompanied by a URL, could constitute "contents of a communication"). Here, Plaintiff has adequately alleged that the communications were collected through wrongfully placed cookies on the Websites. Compl. ¶¶ 28-29, 34-35 (alleging Private Communications collected through wrongfully placed cookies); ¶¶ 36–57 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

**D. Plaintiff Pleads a "Pen Register" Claim Under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as

"a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff adequately pleads each element of this claim. He alleges that the cookies and the corresponding software code installed by Defendant on its Websites operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." *Id*.

Defendant argues Plaintiff cannot state a claim under CIPA § 638.51 because internet technologies are not "Pen Registers." MTD at 17. But courts in this District have repeatedly rejected that argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiff alleges that the Third Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* Compl. ¶ 155 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information"). Thus, Defendant's argument limiting pen register claims to telephones fails. [3]

**E. Plaintiff's CIPA Claims Are Not Barred by the Statute of Limitations.**

Haleon next incorrectly argues that Plaintiff was required to bring his lawsuit before January 2025 to avoid CIPA's one-year statute of limitations, given his August 2023, November 2023, and January 2024 visits to Haleon's Websites. MTD at 14. The argument is wrong for several reasons.

First, Plaintiff's pursuit of his legal remedies—demonstrated through his March 2024 demand letter—equitably tolls his August 2023, November 2023, and January 2024 website visits. *See Abselet v. Hudson Labor Sols*., Inc., 804 F. App'x 448, 450 (9th Cir. 2020) (a demand letter may equitably estop tolling of a statute of limitations when that letter provides "(i) timely notice; (ii) lack of prejudice to the defendant; and (iii) reasonable and good faith conduct by the plaintiff"); *see also* Compl. ¶¶ 73-74. Because Plaintiff's demand letter equitably tolled the statute of limitations for those website visits, his claims are not time-barred.[4]

---

[3] Defendant also recycles is standing arguments as to this claim, but, as explained above, invasions of privacy suffice. Defendant argues that "pen registers do not record contents," and "Plaintiff alleges only that his IP address and user information was recorded" as "record information." MTD at 16, 18. Indeed, pen registers *only* gather "record information," as they "record[] or decode[] dialing, routing, addressing or signaling information . . . but not the contents of a communication." Cal. Pen. Code § 638.50(b). If Defendant is right—that inappropriately wiretapped "record information" cannot support statutory or Article III standing *under* § 638.51, then there is essentially no standing under § 638.51 at all. Moreover, Defendant's cited cases conflate CIPA's § 638.51 with § 631. *Khamooshi* did not analyze § 638.51 at all. *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788, at *12 (N.D. Cal. May 13, 2025). And, in *Insider*, the court only addressed IP addresses as insufficient to convey Article III standing. *See Gabrielli v. Insider*, *Inc*., 2025 U.S. Dist. LEXIS 28788, at *1 (S.D.N.Y. Feb. 18, 2025).

[4] Plaintiff also alleges there was a tolling agreement. Compl. ¶ 72. The duration of the tolling agreement was for a month from the time the parties entered into the agreement. *Id*.

Separately, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. Compl. ¶ 70. Claims may be dismissed as untimely "only when the running of the statute [of limitations] is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009). "[U]nder both the discovery rule and the fraudulent concealment doctrine, [Plaintiff's] claims . . . did not accrue until shortly before [his] complaint was filed, because despite her due diligence, [he] did not learn that defendants' proprietary technology was intercepting her [] information until shortly before the complaint was filed." *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255-56 (N.D. Cal. 2024) (Orrick, J.).

This Court addressed this issue in *Fullstory*, 712 F. Supp. 3d at 1255-56 (N.D. Cal. 2024) (Orrick, J.). In *Fullstory*, the defendant moved to dismiss the CIPA claims, arguing they fell outside CIPA's one-year statute of limitations. There, like here, the plaintiff alleged that Defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all. *Id*. And there, like it should here, this Court found these allegations sufficient to toll CIPA's statute of limitations. *Id.* As in *Fullstory*, Plaintiff here invokes both the delayed discovery rule and fraudulent concealment.

The "delayed discovery rule tolls the statute of limitations, which requires the plaintiff to plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1130 (C.D. Cal. 2010). Moreover, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fullstory*, 712 F. Supp. 3d at n.6. Here, "given the type of the case this is—based on defendants' use of highly technical proprietary software," and given that Plaintiff "does not have the technical knowledge necessary to test whether the Websites honored users' requests to reject all cookies" (Compl. ¶ 70), and that he only "learned of Defendant's Privacy violations from counsel" in February 2024 (Compl. ¶ 71), the analysis is the same as the Court faced in *Doe.* That is, that these allegations are "sufficient," and find the statute of limitations tolled per the delayed discovery doctrine. *Doe*, 712 F. Supp. 3d at n.6.

These allegations are sufficient to allege tolling for various prospective class members under the delayed discovery rule, as they may be unable to the discovery earlier, despite reasonable diligence. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (holding that a delayed discovery argument posed a "barrier to dismissal" when the plaintiff alleged that the defendants secretly incorporated Pixels into their web properties and patient portals).

Separately, fraudulent concealment tolls Plaintiff's claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 (internal quotation marks and citation omitted). Plaintiff easily demonstrates these requirements: he alleges Haleon affirmatively misrepresented to website visitors that users can "Reject All" cookies and tracking technologies. *See*, *e.g.*, Compl. ¶ 142-143 ("These misrepresentations and omissions were known exclusively to, and actively concealed by [Haleon]"). Plaintiff also pleads that he did not have actual or constructive knowledge of the facts giving rise to his claim. *Id*. ¶¶ 69, 71, 242-44. Because of this affirmative misrepresentation, and Plaintiff's lack of technical expertise, Plaintiff acted diligently in bringing this action after learning of Haleon's privacy violations in 2024. *Id*. ¶¶ 71, 242-243. Indeed, Plaintiff's invocation of the fraudulent concealment doctrine is *stronger* than it was in *Fullstory*. Here, unlike in *Fullstory*, Plaintiff has "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could truly "Reject All" cookies and tracking technologies. *Compare Fullstory*, 712 F. Supp. 3d at 1256 *with* Compl. ¶¶ 138, 142. As such, Haleon's fraudulent concealment tolled the statute of limitations.

**F. Plaintiff Adequately Pleads Fraud.**

Plaintiff and Defendant agree that a plaintiff must plead (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; 4) justifiable reliance; and (5) resulting damage. MTD at 19, citing *Heeger v. Facebook, Inc*. 509 F. Supp 3d 1182, 1194 (N.D. Cal. 2020). Plaintiff has done so. He pleads that Haleon "assure[d] visitors that

they can choose to reject all cookies"; that "Defendant's representations, however, were false," because "even though Defendant received notice that certain users . . . did not consent . . . Defendant nevertheless caused the Third Party Tracking Cookies to be placed . . . even for those users who elected to reject all cookies." Compl. ¶¶ 1, 27-28.

Haleon asserts three separate challenges to Plaintiff's fraud claim. ***First***, Haleon oddly disputes that Plaintiff has alleged that "the Reject All cookies button was actually false." MTD at 19. Because Plaintiff alleged that "cookies are enabled by default," Haleon posits the Court cannot infer that "there were any cookies in process at the time Plaintiff clicked 'Reject All.'" *Id*. But Haleon's own observations contradict this point. Haleon explains that Plaintiff also alleges that "data was sent after he pressed 'Reject All.'" *Id*. Indeed, Plaintiff provides screenshots of precisely how this occurs in the Complaint. Compl. ¶¶ 30-31. Because Plaintiff alleges that Defendant placed cookies on users' devices "***even after users elect[ed] to 'Reject All' cookies,"*** (*See id*. ¶ 28)—he alleges that the representation that users could "Reject All" cookies was demonstrably false. To the extent Defendant challenges the evidence supporting these allegations, that argument is inappropriate for this stage. Courts cannot assess evidence underlying the allegations on the pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

***Second***, Haleon next argues that "plaintiff alleges no facts to plausibly demonstrate that Haleon had knowledge of any falsity," and that Haleon lacked the "inten[t] to defraud or mislead." MTD at 20. But, as explained above, Plaintiff alleged that Haleon "controls the software code of its websites," including its cookie banner, and indeed has "control over whether [cookies] are placed on its user's devices" in the first place." Compl. ¶¶ 2, 21, 138. Moreover, Plaintiff explicitly pled that Defendant "caused . . . tracking cookies to be placed . . . even for those users who elected to reject all cookies." *Id.* ¶ 28. Plaintiff further alleges that Defendant "knew or, should have known, how the Websites functioned" which included the "third-party cookies in use on the Websites," and knew or should have known that "the Websites' programing allowed the third-party cookies to be placed on users'—including Plaintiff's—browsers and devices" and "transmitted to the Third Parties along with users' Private Communications after users attempted to 'Reject All' cookies"

through "testing the Websites [and] evaluating their performance metrics by means of its accounts with the Third Parties." *Id.* ¶ 138. Indeed, the Complaint alleges that Defendant had a strong incentive to wrongfully amass and transmit data from users: it is highly valuable and provides commercial insight into its consumer base. *Id.* ¶¶ 58, 59, 60, 62. It is well-established that "intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Intent may be inferred from these allegations.

And ***third***, Haleon again recycles its argument that Plaintiff has not "suffered any actual damage." MTD at 20. That argument fails for the same reasons discussed above. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

**G. Plaintiff Adequately Pleads Unjust Enrichment.**

Haleon contends that "unjust enrichment is not a standalone claim," and "Plaintiff does not plausibly allege he suffered a loss." Both arguments are meritless.

As to the first, the Ninth Circuit regularly allows independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting unjust enrichment claim to proceed). To plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. As this Court has previously recognized, "plaintiffs may plead this claim as an alternative at this juncture." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (Orrick, J.). Here, Plaintiff alleges that Haleon benefited at Plaintiff's expense by wrongfully sharing and collecting his Private Communications and that the remedies at law are inadequate. Compl. ¶¶ 62, 92, 102, 151-152, 156.

As to the second, as demonstrated *supra,* Plaintiff has alleged both an economic loss *and* a privacy interest in his personal information. Further still, Plaintiff alleges facts to establish that Haleon profited from his data. Compl. ¶¶ 58-59 ("[Plaintiff's] Private Communications . . . help[ed] Defendant further monetize its Websites and maximize revenue by collecting and analyzing user data"); *id.* ¶ 138 ("Defendant also gained financially from, and as a result of, its breach"); and *id.* ¶ 150 (Plaintiff's . . . Private Communications have conferred an economic benefit on Defendant."). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same); *Fullstory*, 712 F. Supp. 3d at 1253 (Orrick, J.) (denying dismissal of unjust enrichment claim when "plaintiffs do allege that their remedies at law are inadequate," and citing *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020)).

**H. Plaintiff Adequately Pleads Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC,* 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012

The Complaint adequately pleads trespass to chattels. Plaintiff alleges that Haleon's conduct interferes with Plaintiff's computers' security, which is an important and intended function of those systems. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact

sufficient to support standing to assert trespass to chattels. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels). Just as breaking open a safe would constitute a trespass to chattel by interfering with that safe's function, placing tracking cookies on a user's computer interferes with that computer's ability to function as its owner intends. Importantly, the cookies also interfere with the function of Plaintiff's computers by taking up storage space. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"); Compl. ¶ 161 (alleging "[r]eduction of storage, disk space, and performance of Plaintiff's and other users' computing devices").

Haleon's cited cases are inapposite. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (unlike here, no allegations of impaired intended function); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (unlike here, "Plaintiffs do not allege that the presence of that cookie 'impairs' the operation of their devices in terms of diminished storage, decreased battery life, or otherwise"); *Yunker v. Pandora Media, Inc.*, 2013 U.S. Dist. LEXIS 42691, at *47 (N.D. Cal. Mar. 26, 2013) (basing decision on *In re iPhone Application Litig.*, 844 F. Supp. at 1040); *Intel Corp.*, 30 Cal. 4th at 1347 (on motion for summary judgment, no evidence of damages or significant inference). But as described above, this area of law has developed significantly over the past decade, including several key decisions from the Ninth Circuit all but abrogating *In re iPhone Application Litig.*, 844 F. Supp. at 1040.

**I. Plaintiff May Allege Punitive Damages.**

Under Cal. Civ. Code § 3294(a), punitive damages are recoverable "the defendant has been guilty of oppression, fraud, or malice." Although California law governs Plaintiff's "substantive claim for punitive damages . . . the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of pleadings." *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005).

The demand for punitive damages need only raise "more than a possibility" of entitlement to relief. *See Crowder v. Shade Store, LLC*, 2024 U.S. Dist. LEXIS 114470, at *28-30 (N.D. Cal. June

26, 2024) (*Twombly* applies to punitive damages); *Omni King, Inc. v. Accelerant Specialty Ins. Co.*, 2023 U.S. Dist. LEXIS 87708, at *10 (C.D. Cal. Apr. 19, 2023) (same). Here, Plaintiff alleges that Haleon entered "agreements between Defendant and [] Third Parties," that governed the integration of third-party cookies into Defendant's Websites. *See* Compl. ¶ 14. "[T]he only plausible conclusion is that an officer, director, or managing agent of [Defendants] authorized, or at the least had knowledge or conscious disregard of, [the alleged] practices." *Crowder*, 2024 U.S. Dist. LEXIS 114470, at *28-30; *see also Jager v. Davol, Inc.*, 2016 U.S. Dist. LEXIS 188821, at * 19 (C.D. Cal. Oct. 20, 2016).

"Taking the allegations as true," Defendant's decisions with respect to the integration of cookies on the Websites would "require coordination from a range of company teams, such as sales, marketing, advertising, finance, and business strategy." *Crowder*, 2024 U.S. Dist. LEXIS 114470, at *28-30; *see also Ruhnke v. Skinmedica, Inc.*, 2014 U.S. Dist. LEXIS 207235, at *11 (C.D. Cal. Sept. 5, 2014) (plaintiff adequately pled a demand for punitive damages where "the fraudulent conduct alleged in the FAC is corporate-wide" because these "[d]ecisions . . . are inherently tied to corporate policy"). These allegations, in addition to those detailing an extensive pattern of deception, active concealment, and a total failure to honor user privacy choices*, see* Compl. ¶¶ 2, 103, 146*,* support an inference that Haleon acted with "oppression, fraud, or malice" sufficient to sustain a claim under California law.

**J. Plaintiff Requests Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Haleon's motion to dismiss must be denied in total.

Dated: June 30, 2025.

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier*___

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*